

GOTLIB LAW

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  4/13/2020
```

April 11, 2020

*Via* ECF

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:     <u>*United States v. Nazae Blanche,* 19 Cr. 166 (VEC)</u>

Dear Judge Caproni:

I represent Nazae Blanche in the above-referenced matter. I write to respectfully request Mr. Blanche's temporary release on bail until the COVID-19 pandemic has ended or is substantially abated. This is no doubt an extraordinary request being made solely based on the extraordinary circumstances presented by this global pandemic and the fact that Mr. Blanche's documented respiratory issues make him more susceptible to severe illness if he contracts COVID-19. The government opposes this motion.

On December 6, 2019, Mr. Blanche pleaded guilty to brandishing a firearm in furtherance of a crime of violence and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Since his March 13, 2019 arrest, Mr. Blanche has been continuously detained, first at the Metropolitan Correction Center ("MCC") and then at the Westchester County Correctional Facility ("WCCF"), where he is currently being housed. This is the first period of incarceration Mr. Blanche has ever served. While detained Mr. Blanche has been a model inmate. Has no disciplinary infractions and has earned multiple meaningful certificates. *See* Certificates Annexed Hereto at "Exhibit A."

As a result of being born more than two months premature, Mr. Blanche suffered from respiratory difficulties during the first two to three years of his life. *See* Speech Language Assessment dated May 5, 2011, Annexed Hereto as "Exhibit B" at 1-2.[1] As a child, Mr. Blanche was diagnosed with asthma and prescribed an Albuterol pump. *See id*. at 2. In the three years prior to his arrest in this matter, Mr. Blanche's future mother-in-law, who has two daughters with chronic asthma, provided Mr. Blanche with treatments for his asthma on multiple occasions. *See* Letter from Sharon Burrell Annexed Hereto as "Exhibit C."

I have spoken to Mr. Blanche's pediatrician, Ashutosh Das, MD, Medical Director of the Department of Pediatrics at Bronx Lebanon Hospital, who confirmed that he treated Mr. Blanche since he was a child and informed me that the last time that Mr. Blanche sought treatment was in January 2019. However, he was unable to provide me with any specific medical information about Mr. Blanche without a HIPAA release form executed by Mr. Blanche. Dr. Das informed

---

[1] Mr. Blanche has informed the undersigned that he has no objection to the information concerning his physical health being filed publicly without redaction.

GOTLIB LAW

me that while he would be willing to write a letter on Mr. Blanche's behalf, he would not be able to do so without a copy of a HIPAA form executed by Mr. Blanche. Unfortunately, the mitigation specialist working with the defense on this case omitted to make a copy of the HIPAA form executed by Mr. Blanche prior to sending it to the records department at Bronx Lebanon Hospital. Dr. Das informed me on April 10, 2020, that he has asked a hospital administrator to see if they can locate the HIPAA form with their records department. I will alert the Court immediately when I learn from Dr. Das if they were able to locate the executed HIPAA form.

We are facing a serious and urgent public health crisis. On March 11, 2020, the World Health Organization officially classified COVID-19, a new strain of coronavirus, as a global pandemic.[2] On January 21, 2020, Washington State announced the first confirmed case of coronavirus in the United States.[3] Less than three months later COVID-19 has infected over 496,636 people across the United States, leading to at least 18,731 deaths.[4]

The exponential rate of coronavirus infection is unparalleled. The first case of coronavirus in New York State was announced on March 1, 2020. Less than two weeks later, New York State reported 325 positive cases. To date, the state has amassed 170,512 confirmed cases of the virus, with 7,844 deaths.[5] New York now has more confirmed cases of coronavirus than any country, aside from the United States, in the world.[6] And the majority of those cases are in New York City, making it an epicenter of the pandemic.[7]

According to the Center for Disease Control, asthma sufferers are more at risk for serious complications if they contract COVID-19.[8] "People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."[9]

"Prisons are petri dishes for contagious respiratory illnesses."[10] Inmates cycle in and out of pretrial facilities from all over the world and the country, and people who work in the facilities

---

[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (Mar. 11, 2020), at https://bit.ly/2W8dwpS.
[3] *First Patient With Wuhan Coronavirus Is Identified in the U.S.*, The New York Times (Jan. 21, 2020), at https://www.nytimes.com/2020/01/21/health/cdc-coronavirus.html.
[4] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (Apr. 11, 2020), at https://nyti.ms/2U4kmud (updating regularly).
[5] *Id.*
[6] Coronavirus: New York Has More Cases Than Any Country, BBC News (Apr. 10, 2020), at https://www.bbc.com/news/world-us-canada-52239261.
[7] *Coronavirus in N.Y.C.: Region Is Now an Epicenter of the Pandemic*, The New York Times (Mar. 23, 2020), at https://www.nytimes.com/2020/03/22/nyregion/Coronavirus-new-York-epicenter.html?action=click&module=Spotlight&pgtype=Homepage.
[8] *People with Moderate to Severe Asthma,* CDC (Apr. 11, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html
[9] *Id*.
[10] *Letters to the Editor: A prison doctor's stark warning on coronavirus, jails and prisons*, Los Angeles Times (Mar. 20, 2020), at https://www.latimes.com/california/story/2020-03-20/prison-doctors-stark-warning-on-coronavirus-and-incarceration. *See also* Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, at https://doi.org/10.1086/521910.

leave and return daily, without screening or testing.  Given what we know about COVID-19, attempts by correctional facilities to contain the infection seem futile.  Coronavirus is highly contagious.  On average, one person with the coronavirus will infect between two to three other individuals.[11]  But public health experts agree that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[12]

As of April 5, 2020, there were 24 inmates and 60 staff at WCCF who have been diagnosed with COVID-19.  *See* Letter from Government in *United States v. Willie Sims*, 19-CR-857 (NSR), dated Apr. 5, 2020, Annexed Hereto as "Exhibit D" at 3.  Although WCCF is making efforts to protect other inmates by isolating those individuals the disease is highly contagious and the jail conditions will inevitably result in the spread of the virus.  Since March, Mr. Blanche has received one mask.  He has been unable to disinfect the mask since it was first provided to him.  Mr. Blanche and his family members have inquired with WCCF as to how they can provide additional masks to Mr. Blanche; they have received no response.

Because Mr. Blanche has been found guilty of an offense for which the maximum sentence is life imprisonment, he is subject to mandatory detention, absent an applicable exemption.  *See* 18 U.S.C. § 3143(a)(2) (cross-referencing offenses listed under 18 U.S.C. § 3142(f)(1)(A)-(C)).  While neither of the exemptions within § 3143(a)(2) apply here, Mr. Blanche should be temporarily released pursuant to the exceptional circumstances exemption set forth under 18 U.S.C. § 3145(c).

Section 3145(c) provides that a person detained under 18 U.S.C. § 3143(a)(2) may be released if the individual "meets the conditions of release set forth in section 3143(a)(1)" and "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  "To satisfy 18 U.S.C. § 3143(a)(1), the defendant must show, by clear and convincing evidence that he or she is not likely to flee or pose a danger to the safety of any other person or the community if released under appropriate conditions imposed by the Court."  *United States v. McDuffie*, No. 19-CR-212 (VEC), 2020 U.S. Dist. LEXIS 59594, at *7 (S.D.N.Y. Apr. 3, 2020) (internal quotations and alterations omitted).

The Court can temporarily release Mr. Blanche pending sentencing if Your Honor finds that there is (1) clear and convincing evidence that he is not a flight risk or a danger to others and (2) an exceptional reason why his detention is inappropriate.  *See id.* at *7.

This Court has held that "the combination of a once-in-a-lifetime pandemic" and an underlying medical condition that places an individual at a higher risk of severe illness from COVID-19 constitute exceptional circumstances justifying a defendant's temporary release from custody pending sentencing.  *Id.* at *10 (granting bail pending sentencing to defendant housed at WCCF

---

[11] *The average coronavirus patient infects at least 2 others, suggesting the virus is far more contagious than flu*, Business Insider (Mar. 17, 2020), at https://www.businessinsider.com/coronavirus-contagious-r-naught-average-patient-spread-2020-3.

[12] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (Mar. 2, 2020), at https://bit.ly/2W9V6oS.

and subject to mandatory detention who had an immune system disorder). Furthermore, "several courts have already recognized, the heightened threat posed by COVID-19 to an inmate with a documented respiratory condition in a detention facility with multiple confirmed cases presents a unique combination of circumstances, justifying release under § 3145(c)." *United States v. McKenzie*, No. 18-CR-834 (PAE), 2020 U.S. Dist. LEXIS 55503, at *8-9 (S.D.N.Y. Mar. 30, 2020) (internal citations, quotations and alternations omitted) (granting bail pending sentencing to defendant subject to mandatory detention who had asthma).

**1. The Proposed Stringent Conditions Will Satisfy the Requirements of Section 3145(c)**

Courts in this district are re-evaluating the calculus of bail in light of COVID-19 and have been granting bail to defendants pending sentencing, even those subject to mandatory detention, who are at heightened risk of severe illness if they contract COVID-19. *See, e.g., United States v. McDuffie*, No. 19-CR-212 (VEC), 2020 U.S. Dist. LEXIS 59594 (S.D.N.Y. Apr. 3, 2020) (granting bail pending sentencing to defendant subject to mandatory detention who had an immune system disorder); *United States v. McKenzie*, No. 18-CR-834 (PAE), 2020 U.S. Dist. LEXIS 55503 (S.D.N.Y. Mar. 30, 2020) (same but with asthma); *United States v. Roman*, 19-CR-116 (KMW), 2020 U.S. Dist. LEXIS 53956 (S.D.N.Y. Mar. 27, 2020) (same but with hypertension and brain aneurysms); *United States v. Witter*, No. 19-CR-568 (SHS), 2020 U.S. Dist. LEXIS 53189 (S.D.N.Y. Mar. 26, 2020) (same but with hypertension).

Mr. Blanche is asking the Court to temporarily release him on conditions of bail that are as stringent, if not more stringent, than those imposed by courts in the above-cited cases. The conditions that Mr. Blanche proposes he be released on are:

1. A $100,000 personal recognizance bond signed by Mr. Blanche who may affix his signature remotely within three hours of his release, and co-signed by six financially responsible persons, who may sign the bond remotely within three business day of Mr. Blanche's release;
2. 24-hour home incarceration at his cousin's residence in New Jersey, except for necessary medical services, enforced by electronic monitoring, which Mr. Blanche will self-install at the direction of Pretrial Services, all other leave from the residence must be submitted through defense counsel for the Court's approval;
3. A remote inspection of the proposed residence and approval of its suitability by Pretrial Services prior to Mr. Blanche's release;
4. All mandatory conditions of release set forth in the standard "Order Setting Conditions of Release" form;
5. No visitors to the residence except for family members, Mr. Blanche's fiancé, and defense counsel;
6. Pretrial Services supervision as directed by the Pretrial Services officer;
7. Surrender of all passports and other travel documents and no applications for new or replacement documents;
8. Mr. Blanche shall have no access to the internet or any internet-enabled device, except for purposes of supervision by Pretrial Services and, with prior approval by Pretrial Services, to take online classes;

9. Within two weeks of his release, Mr. Blanche must purchase or secure an iPhone with Facetime capabilities for remote/virtual monitoring by Pretrial Services;
10. Mr. Blanche shall not have contact with any co-defendants, witnesses, or victims;
11. Mr. Blanche shall not use or possess any narcotic drug or controlled substance unless prescribed by a licensed medical professional;
12. Drug testing as directed by Pretrial Services;
13. No possession of a firearm or any type of weapon;
14. Mr. Blanche shall promptly inform Pretrial Services when any cohabitant of the residence, including himself, becomes symptomatic of any illness; and
15. Telephonic status conferences with the Court every fourteen days.

The proposed financially responsible individuals who are willing to sign a bond on Mr. Blanche's behalf consist of his mother, his fiancé, his fiancé's mother, his fiancé's father, a family friend, and one of his cousins (whose residence in New Jersey he will reside at). Prior to the COVID-19 pandemic each of these individuals was employed and their combined salaries are sufficient to satisfy the proposed $100,000 bond. Two of the proposed financial responsible persons, Mr. Blanche's fiancé and his fiancé's father, work in security or administrative positions at a hospital and have temporarily stopped working in light of the pandemic but anticipate returning to their positions after things have abated. Mr. Blanche's mother and his cousin are both employed by Target, his mother as a security specialist and his cousin as a senior team leader, and have both been working during the pandemic.

Mr. Blanche understands that by executing a bond for him, those closest to him are putting their livelihoods on the line. He would never do anything to jeopardize that or the trust that they place in him. Moreover, Mr. Blanche has never traveled outside of the country and does not even possess a passport. Mr. Blanche is not a flight risk.

In respect to danger, it is important to appreciate that all of the offense conduct at issue in this case occurred in the vicinity of one neighborhood in the Bronx, the neighborhood where Mr. Blanche resided for the vast majority of his young life. The proposed conditions of release would not only require Mr. Blanche to be on 24-hour home incarceration, they would prevent him from going to the Bronx and require him to live in a different state. These facts combined with Mr. Blanche's exemplary behavior while incarcerated for the past year and his acceptance of responsibility (as evidenced by his guilty plea) are compelling proof that he presents no danger to the community or others if he were to be temporarily released. However, the potential danger facing him if he is not temporarily released is substantial and terrifies both him and his loved ones.

2. **The COVID-19 Pandemic Combined with Mr. Blanche's Documented Respiratory Issues Constitute Exceptional Circumstances Justifying His Temporary Release**

The COVID-19 pandemic combined with Mr. Blanche's documented respiratory issues and his incarceration at a facility where there are multiple confirmed cases of COVID-19, constitute the "unique combination of circumstances, justifying [his] release under § 3145(c)." *United States v. McKenzie*, No. 18-CR-834 (PAE), 2020 U.S. Dist. LEXIS 55503, at *9-10 (S.D.N.Y. Mar. 30,

GOTLIB LAW

2020) (finding that the COVID-19 pandemic combined with a defendant's health condition that places them at a higher risk of severe illness if they contract the virus constitutes exceptional circumstances justifying temporary release pending sentencing); *see also United States v. McDuffie*, No. 19-CR-212 (VEC), 2020 U.S. Dist. LEXIS 59594, at *10-12 (S.D.N.Y. Apr. 3, 2020) (same); *United States v. Roman*, 19-CR-116 (KMW) (SLC), 2020 U.S. Dist. LEXIS 53956, at *7-8 (S.D.N.Y. Mar. 27, 2020) (same); *United States v. Witter*, No. 19-CR-568 (SHS), 2020 U.S. Dist. LEXIS 53189, at *4-5 (S.D.N.Y. Mar. 26, 2020) (same).

Mr. Blanche is similarly situated to each of the defendants in the four above-cited cases in that they are all: (1) subject to mandatory detention following their entry of a guilty plea; (2) suffer from documented illnesses that place them at a higher risk of severe illness if they contract COVID-19; and (3) housed in prisons with multiple confirmed cases of COVID-19. The same reasons that compelled the courts to grant temporary release to the defendants in these four cases compel Mr. Blanche's temporary release until the pandemic has ended or substantially abated.

Accordingly, it is respectfully requested that Mr. Blanche be temporarily released on bail pursuant to the above-listed conditions of release until the COVID-19 pandemic has ended or substantially abated. Thank you for your consideration.

Respectfully submitted,

/s/

Valerie A. Gotlib

cc:   all counsel of record (*via* ECF)

The Government must respond to Mr. Blanche's bail application no later than **April 14, 2020**. The Government must also indicate in its letter whether the parties waive a telephonic hearing and consent to the application being decided on the papers.

SO ORDERED.

*[signature]* 4/13/2020

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE